IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 15-87 |
| ) | Senior Judge Nora Barry Fischer |
| EARL BRINSON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I.     INTRODUCTION**

Presently before the Court is Defendant Earl Brinson's counseled Motion to Release/Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Government's Response in opposition thereto, Defendant's Reply and the Government's Sur-reply. (Docket Nos. 3124, 3129, 3138, 3144). After careful consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Defendant's motion seeking compassionate release is denied without prejudice, as the Court declines to exercise its discretion to reduce his sentence.

**II.     BACKGROUND**

On September 29, 2015, Defendant pled guilty to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, contrary to the provisions of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i), in violation of 21 U.S.C. § 846, pursuant to a Rule 11(c)(1)(C) plea agreement with a stipulated sentence of 120 months' incarceration. (Docket Nos. 680, 681). At the sentencing hearing held on January 29, 2016, the Court accepted the parties' plea agreement and sentenced Defendant in accordance with it to a term of 120 months' imprisonment, which was the mandatory minimum term of imprisonment required by statute, followed by a five-year term of supervised release. (Docket Nos. 1017, 1018).

In accepting the parties' plea agreement and imposing the stipulated sentence, the Court explained that the sentence adequately addressed the nature and circumstances of Defendant's offense, as well as his history and background, and that it was sufficient, but not greater than necessary, to meet all of the goals of sentencing. (Docket No. 2041 at 37). To that end, the Court commented on the extremely serious nature of the offense and Defendant's role as a significant distributor for a large-scale heroin trafficking organization centered in the Beltzhoover area of Pittsburgh. (*Id.* at 19). For his part, Defendant was responsible for at least one kilogram but less than three kilograms of heroin and he also possessed firearms relative to his offense conduct. (*Id.* at 18, 19). The Court observed that drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of deadly, addictive drugs like heroin. (*Id.* at 21). Additionally, the Court noted the danger presented by Defendant's firearm possession. (*Id.* at 18). Further, the Court pointed out that Defendant's criminal conduct in this case was not his first brush with the law, as he had a significant criminal history and previously served time on various state convictions involving weapons, drug possession, simple assault and obstructing law enforcement as well as probation revocation. (*Id.* at 19, 22). Finally, among other matters related to Defendant's history and background, the Court discussed his physical condition, detailing that he is paralyzed from the chest down as a result of a shooting and therefore is wheelchair-bound. (*Id.* at 24).

As noted, Defendant now seeks compassionate release under the First Step Act's recent amendments to 18 U.S.C. § 3582. (Docket Nos. 3124, 3138). He argues that his paralysis coupled with the ongoing COVID-19 pandemic serve as extraordinary and compelling reasons to reduce his sentence. (Docket No. 3124, ¶¶ 23, 24). More specifically, Defendant contends that multiple gunshot wounds to his chest, combined with numerous surgeries to his chest and lungs

have resulted in "tremendously compromised lung condition" and a compromised immune system which makes him particularly vulnerable to contracting COVID-19 at FCI Elkton where he is incarcerated. (*Id.* ¶¶ 24, 25). Along with his motion, Defendant supplied six pages of medical records from late 2013/early 2014 indicating that he suffered paraplegia following spinal cord injury and injury to both lungs resulting from gunshot wounds to his chest. (Docket No. 3124-7 at 5). In arguing for a sentence reduction and release to home detention, Defendant claims that he is not a danger to the community and generally submits that other § 3553(a) factors weigh in favor of release. (Docket No. 3124, ¶ 30). If released, Defendant proposes that he would live at the home of Barnetta Roach, who is the grandmother of his girlfriend, Brandi Roach.[1] (*Id.* ¶ 29).

The Government opposes Defendant's motion for compassionate release, as does the United States Probation Office. (*See* Docket Nos. 3129 at 2; 3144). The Government acknowledges that Defendant's motion is worthy of close consideration because of his lower extremity paralysis resulting from gunshot wounds he sustained in 2013. (Docket No. 3129 at 1). Nonetheless, the Government argues that Defendant's motion does not establish any extraordinary and compelling reasons for the sentence reduction he seeks because the motion is accompanied by dated medical records and is otherwise only supported by generalized conclusions about Defendant's current condition and the condition of FCI Elkton where he is housed. (*Id.* at 5).

---

[1] Although Defendant's motion is denied for the reasons set forth herein, the Court additionally notes the seeming inadequacy of Defendant's release plan. Defendant identifies his current girlfriend as Brandi Roach; however, at the time he was sentenced in January 2016, Paulisha Hodges was identified as his fiancée. (*See* Docket Nos. 871, ¶ 57; 973-1). As the Government aptly observes, the extended stability of Defendant's relationship with Ms. Roach is arguably uncertain given his incarceration the entire time since Ms. Hodges was identified as his fiancée, which in turn calls into question the extended stability of his release plan. (Docket No. 3129 at 8). As the Government also notes, Defendant's residence at Ms. Roach's grandmother's house could place the grandmother's health in jeopardy given that she may be within the population that is particularly vulnerable to COVID-19. (*Id.*). These issues with Defendant's release plan are another factor demonstrating that a sentence reduction is not warranted here. *See e.g.*, *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *1-2 (C.D. Ill. May 8, 2020) (noting inadequacy of release plan as one factor, among other reasons, in denying motion for compassionate release even though 61-year old defendant with asthma, high blood pressure and a history of coronary artery disease was housed at FCI Fort Dix where there were many confirmed COVID-19 cases).

The Government obtained Defendant's BOP medical records and submits that review of same indicates that the BOP has consistently and sufficiently addressed his medical needs and continues to do so. (*Id.* at 5-6). As such, the Government asserts that Defendant has not met his burden to demonstrate that his current physical condition is an extraordinary and compelling reason for a sentence reduction. (*Id.* at 6). Furthermore, the Government contends that Defendant has failed to demonstrate that he will not be a danger to the safety of the community if released. (*Id.* at 9). To that end, the Government highlights that Defendant has a lengthy criminal history involving gun and drug trafficking crimes and participation in gang activity. (*Id.*). His conduct in this case involved high-volume heroin trafficking with members of the Zhoove gang, and he unlawfully possessed guns during the same time period. (*Id.*). The Government further observes that Defendant engaged in this serious criminal activity while limited by the same physical impairments that he now relies on in support of his pending motion, and there is no reason to be confident that he will not commit similar crimes if released from BOP custody. (*Id.* at 1, 10).

In Reply, Defendant supplied his BOP medical records, noting that he has chronic urinary tract infections and is missing part of a lung, in addition to his paralysis, and contending that he is immunocompromised. (Docket Nos. 3138, ¶ 3; 3138-1 at 59). Defendant also repeats that he is not a danger to the community, asserting that "[i]t is difficult to believe that [he] would pose more of a threat to the community now than he would [on July 3,] 2023," which is his projected release to home confinement date. (Docket No. 3138, ¶ 4).

The Government counters in its Sur-reply that Defendant still fails to establish extraordinary and compelling reasons for the sentence reduction he seeks and that he would not endanger the community if released. (Docket No. 3144 at 1, 2).

No further briefing or supplementation has been requested and the Court considers this

4

matter to be fully briefed and ripe for disposition. After considering the parties' respective positions set forth in the briefing, and a review of the record, and for the reasons that follow, Defendant is not entitled to a sentence reduction at this time.

### III. DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. *See United States v. Pawlowski*, ___ F.3d ___, 2020 WL 4281503, at *2 (3d Cir. Jun. 26, 2020). Pursuant to that provision, a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The statute guides the court's discretion by requiring the court to consider:

> (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a), to the extent they apply; and (3) whether a reduction is consistent with the Sentencing Commission's Policy Statement in § 1B1.13 of the Sentencing Guidelines.

*United States v. Brown*, No. 2:12-cr-00224-1, 2020 WL 4345077 at *1 (W.D. Pa. July 29, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Here, the Government does not contest that Defendant has exhausted his administrative remedies, but it does contest that he has met his burden of demonstrating that his current physical condition is an extraordinary and compelling reason requiring a sentence reduction to time served and that he would not endanger the community if released. (Docket No. 3129 at 6, 9-10). The Court addresses these matters in turn.

As an initial matter, the Sentencing Commission's policy statement related to § 3582(c)(1)(A) provides, in part, that "the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13(1)(A). [2]  The policy statement then identifies four categories of extraordinary and compelling reasons, including the defendant's medical condition. *See* U.S.S.G. § 1B1.13, Application Note 1(A).  The Application Note identifies two medical conditions that can establish an extraordinary and compelling reason: (1) terminal illness; and (2) certain non-terminal conditions that substantially diminish the ability of the defendant to provide self-care within the correctional environment and from which he is not expected to recover.  *See id.*  The defendant bears the burden to prove that extraordinary and compelling reasons exist.  *See United States v. Smith*, Crim. No. 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citation omitted).

Defendant has not met that burden here, despite his assertion that extraordinary and compelling reasons are established because he is paralyzed, has a compromised immune system, is missing part of a lung, has chronic urinary tract infections, and the COVID-19 pandemic is ongoing.  (*See* Docket Nos. 3124, 3138).  The Court's review of Defendant's medical records confirm that he is paralyzed and wheelchair bound, has suffered from urinary tract infections and is missing part of a lung, but they do not document any current health problems because of these

---

2        "While the relevant portions of the Sentencing Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they do provide some benchmarks for the Court's consideration."  *Brown*, 2020 WL 4345077, at *2.

issues.³  (Docket No. 3138-1 at 11, 24, 26, 31, 39, 40, 59, 79).  Likewise, the medical records do not reflect that Defendant is currently experiencing any health problems as a result of a compromised immune system as suggested in his motion.⁴  Rather, the medical records show that Defendant most recently was being treated for a pressure ulcer on his left gluteal area in March and April of 2020, which was healing well without infection.  (*Id.* at 1-4, 42-43).  Additionally, while Defendant has experienced urinary tract infections in the past, he was counseled about the appropriate process and hygiene for catheter use, and a treatment note on March 4, 2020 indicates the issue was resolved as of that time.  (*Id.* at 8, 11, 13).  Overall, the longitudinal medical record reveals that Defendant has been provided with appropriate medical treatment throughout the course of his incarceration.

Although the Court is sympathetic to Defendant's physical challenges caused by his paralysis and other conditions, the record fails to demonstrate that his conditions are serious enough to warrant release for the reasons just discussed.  Moreover, Defendant's broad assertion that "the prison's inflexibility to give [him] the ability to take self-care measures directed by the CDC to remain safe during the outbreak," without further explanation or support, (*see* Docket No. 3124, ¶ 31), does not suffice to establish that a sentence reduction is warranted here.  To that end, the Court has considered the impact of the COVID-19 pandemic at FCI Elkton and recognizes that

---

3   Notably, the CDC does not list paralysis, urinary tract infections or a partial lung as conditions that place an individual at increased risk of severe illness from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (last visited Aug. 13, 2020).

4   According to the CDC, an individual with an "[i]mmunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines" **might** be at an increased risk for severe illness from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (last visited Aug. 13, 2020).  Here, Defendant generally claims that he has a compromised immune system, (*see* Docket Nos. 3124, ¶ 24; 3138, ¶ 3), but the medical records do not document this problem or indicate that he has required medical care for same during his incarceration.  As discussed herein, to the extent Defendant has experienced urinary tract infections, the BOP has provided appropriate treatment to address that condition.

despite being "one of the hardest-hit federal prison facilities in terms of Covid-19," Elkton has "shown signs that BOP measures designed to protect inmates such as visitation restrictions, mass testing, and modifications to facility operations are helping to curtail the spread of the virus." *United States v. Thornton*, Crim. No. 2:18-167-1, 2020 WL 4368155, at *4 (W.D. Pa. July 29, 2020) (citing *United States v. Montanez*, No. 15-CR-122-FPG, 2020 WL 4218007, at *3 (W.D.N.Y. July 23, 2020)). At present, there is one case of COVID-19 among inmates at Elkton and 986 inmates have recovered.[5]  *See* https://www.bop.gov/coronavirus/ (last visited Aug. 13, 2020).

This Court agrees with others that have held that "[t]he existence of the virus in a prison – even the level of infection at Elkton – is not sufficient to establish extraordinary and compelling circumstances without some proof that the defendant is at more severe risk for infection than his fellow inmates."  *Thornton*, 2020 WL 4368155, at * 4 (quoting *United States v. Rutley*, No. 17-cr-56-pp, 2020 WL 4040729, at *7 (E.D. Wis. July 17, 2020)). As discussed, Defendant has not demonstrated that his medical conditions present that severe risk. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *Thornton*, 2020 WL 4368155, at *4 ("To merit compassionate release, Defendant must show more than mere fear or speculation concerning the possibility of contracting the virus.") (citations omitted); *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *1, *2 (E.D. Mich. May 7, 2020) (compassionate release

---

5    Although nine inmates have died of COVID-19 while incarcerated at Elkton, all of those deaths occurred prior to early May 2020.  *See* https://www.bop.gov/coronavirus/ (last visited Aug. 13, 2020); *Thornton*, 2020 WL 4368155 at *4 (citing *Montanez*, 2020 WL 4218007 at *3).

not warranted for defendant incarcerated at FCI Elkton even though he was identified as vulnerable inmate as a result of hypertension and a body mass index greater than 40 because the "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission.").

In sum, the Court certainly is sympathetic to Defendant's concerns for his health given the COVID-19 pandemic but concludes that he has not established extraordinary and compelling reasons for release under 18 U.S.C. § 3582(c)(1)(A)(i).

Even if the Court were to conclude that Defendant's current medical condition coupled with the COVID-19 pandemic give rise to extraordinary and compelling reasons, those considerations do not outweigh the applicable factors set forth in § 3553(a) which the Court is to consider. *See* 18 U.S.C. § 3582(c)(1)(A); *Pawlowski*, 2020 WL 4281503, at *2 ("[B]efore granting compassionate release, a district court must consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.") (internal quotation marks and citation omitted); *see also* U.S.S.G. § 1B1.13(2) (under the relevant policy statement in the Guidelines, the Court is to consider whether the defendant is a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g)). As the Court of Appeals recently affirmed, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the district court. *See Pawlowski*, 2020 WL 4281503, at *2.

Having carefully considered the relevant § 3553(a) factors in this case, as well as § 3142(g), the Court declines to exercise its discretion to reduce the 120-month term of incarceration in Defendant's case, as such sentence remains sufficient, but not greater than necessary to meet all

of the goals of sentencing.  *See* 18 U.S.C. § 3553(a).  In this Court's estimation, such sentence remains fair and appropriate, for the reasons previously detailed on the sentencing record, which are not outweighed by the increased risk of contracting COVID-19 faced by Defendant while incarcerated at FCI Elkton.

The Court has once again carefully considered the § 3553(a) factors and finds that the nature and circumstances of the offense, Defendant's history and characteristics and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct" do not justify a sentence reduction here.  18 U.S.C. §§ 3553(a)(1); 3553(a)(2)(A)-(B).  To that end, the Court reiterates the reasons previously stated at the sentencing hearing for accepting the parties' Rule 11(c)(1)(C) plea agreement and imposing the stipulated sentence.  First and foremost, Defendant's criminal conduct was extremely serious.  He was a significant distributor for a large-scale heroin trafficking organization, who was responsible for at least one kilogram but less than three kilograms of heroin and possessed firearms relative to his drug trafficking activities.  (Docket No. 2041 at 18, 19).  Defendant's criminal conduct in this case was not his first brush with the law, as he had a lengthy criminal history and previously served time on various state convictions involving weapons, drug possession, simple assault and obstructing law enforcement as well as probation revocation.  (*Id.* at 19, 22).  As such, the sentence imposed was appropriate to provide just punishment, to promote respect for the law and to afford adequate deterrence.  All of these factors previously discussed by the Court remain relevant and


of the goals of sentencing.  *See* 18 U.S.C. § 3553(a).  In this Court's estimation, such sentence remains fair and appropriate, for the reasons previously detailed on the sentencing record, which are not outweighed by the increased risk of contracting COVID-19 faced by Defendant while incarcerated at FCI Elkton.

The Court has once again carefully considered the § 3553(a) factors and finds that the nature and circumstances of the offense, Defendant's history and characteristics and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct" do not justify a sentence reduction here.  18 U.S.C. §§ 3553(a)(1); 3553(a)(2)(A)-(B).  To that end, the Court reiterates the reasons previously stated at the sentencing hearing for accepting the parties' Rule 11(c)(1)(C) plea agreement and imposing the stipulated sentence.  First and foremost, Defendant's criminal conduct was extremely serious.  He was a significant distributor for a large-scale heroin trafficking organization, who was responsible for at least one kilogram but less than three kilograms of heroin and possessed firearms relative to his drug trafficking activities.  (Docket No. 2041 at 18, 19).  Defendant's criminal conduct in this case was not his first brush with the law, as he had a lengthy criminal history and previously served time on various state convictions involving weapons, drug possession, simple assault and obstructing law enforcement as well as probation revocation.  (*Id.* at 19, 22).  As such, the sentence imposed was appropriate to provide just punishment, to promote respect for the law and to afford adequate deterrence.  All of these factors previously discussed by the Court remain relevant and

counsel against granting the sentence reduction Defendant now seeks.[6]

Another factor which strongly counsels against a sentence reduction is the need to protect the community from further crimes by Defendant. *See* 18 U.S.C. §§ 3553(a)(2)(C); 3142(g). As this Court has repeatedly observed, heroin trafficking poses a substantial risk of harm to the community. (Docket No. 2041 at 21). What's more, Defendant not only engaged in heroin trafficking, but also possessed firearms, (*id.* at 18), thus creating the potential for additional danger to the community.

Despite same, Defendant now broadly asserts that he is not a danger to the community. (Docket Nos. 3124, ¶ 30; 3138, ¶ 4). His criminal conduct in this case, along with his significant criminal history involving both gun and drug offenses, strongly suggest otherwise. Moreover, as the Government points out, Defendant engaged in the serious criminal conduct for which he is serving the current sentence of incarceration while limited by the same physical impairments that he now relies upon in seeking a sentence reduction. *See e.g., United States v. Zamor*, ___ F. Supp. 3d ___, 2020 WL 2764282, at *2 (S.D. Fla. May 12, 2020) (denying compassionate release of defendant with asthma, liver problems and two prior brain surgeries for subdural hemorrhage because he was a repeat drug trafficker who was serving a sentence for a crime he committed "while suffering from the same conditions he contends now support a reduction in his sentence"). All told, the Court cannot confidently conclude that Defendant will not commit similar offenses which will endanger the community if he is released.

---

6   Other information about Defendant's history and characteristics weigh against granting a sentence reduction. Defendant's employment history is very limited. Prior to the time Defendant began collecting Social Security disability insurance benefits in 2014, he worked for six months in 2013 at a youth recreation department, he had a brief stint working at PNC Park in 2013, and he worked for one day in 2011 at a fudge shop. (Docket No. 871, ¶¶ 74-76). Given Defendant's lack of prior employment and relatively young age of 28, recidivism remains a concern if he were to be released. That concern is further amplified by the fact that there is no information in the record before the Court to indicate what, if any, programming Defendant has taken advantage of while in BOP custody.

### IV.  CONCLUSION

The Court concludes that there are no extraordinary and compelling reasons which warrant a sentence reduction in Defendant's case and the §3553(a) factors weigh heavily against same. Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Release/Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Docket No. 3124) is DENIED WITHOUT PREJUDICE.

<div style="text-align: right;">
<u>s/ Nora Barry Fischer</u>
Nora Barry Fischer
Senior United States District Judge
</div>

Date:       August 14, 2020

cc/ecf:     All counsel of record